IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNIFER D. PETTUS,         )  | |
| )  | |
| Plaintiff,         )  | |
| )  | |
| v.         )  | CIVIL ACTION NO. 2:05cv0977-VPM |
| )  | [WO] |
| JO ANNE B. BARNHART,         )  | |
| Commissioner of Social Security,         )  | |
| )  | |
| Defendant.         )  | |

**MEMORANDUM OPINION AND ORDER**

Claimant Jennifer D. Pettus ["Pettus"] has filed this action seeking review of a final decision by the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. # 1, p. 1). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.   PROCEDURAL BACKGROUND AND FACTS**

Pettus filed applications seeking Disability Insurance Benefits and Supplemental Security Income benefits in which she alleged that she is disabled due to "back pain, leg pain, migraine headaches, hypertension, and learning problems" (R. 13). Pettus, who has filed applications for disability benefits on two previous occasions,[1] is currently 28 years old (R.

---

[1] Pettus filed the relevant applications in February and March 2003 (R. 85-87; 499-502). She filed applications at least twice before in October 2000 (79-81) and July 2002 (R. 82-84), but she did not pursue these applications beyond the initial denial (R. 37-40). Almost as an aside, Pettus contends that the Commissioner should have reopened the previous applications, but the opinion of the administrative law judge ["ALJ"] that is currently before the court indicates that he did not view

85).  She has a "special" high school education (R. 34, 232) and previous work experience as a cafeteria server, delicatessen worker and a fast food worker (R. 32).

Her application was denied initially (R.41-42), and a hearing before ALJ Steven L. Carnes resulted in an unfavorable decision (R. 10-34).  The Social Security Administration's Appeals Council denied Pettus's request for review (R. 6-8), thus rendering the ALJ's opinion the final decision of the Commissioner.  Pettus then filed this timely lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[2]  This is true despite the existence

---

the previous decisions as binding and evaluated Pettus's claim based on all of the evidence in the record, including evidence on which the previous denials were apparently based (R. 13-34).

[2]   In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S.

of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2000).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also* **Ambers v. Heckler**, 736 F.2d 1467, 1469 (11th Cir. 1984); **Williams v. Barnhart**, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must determine whether she suffers from a severe impairment that has lasted or is expected to last

---

389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

12 months or more. §§ 404.1509, 416.909, 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations." §§ 404.1545(a), 416.945(a). Considering his RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of her past relevant work. §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

### B.   *Application of the Standard: The ALJ's Findings*

After reviewing the evidence and the relevant legal standards, the ALJ made the following findings:

> 1. Claimant met the insured status requirements of the Social Security Act as of the alleged onset date.
>
> 2. Claimant has not engaged in substantial gainful activity since the alleged onset date.
>
> 3. Claimant has borderline intellectual functioning, mild

        thoracolumbar scoliosis, hypertension, and migraine headaches, which are "severe" impairments.

4. Claimant's impairments considered individually and in combination do not meet or equal the severity of any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Claimant's allegations of pain and functional limitations are not fully credible.

6. Claimant retains the residual functional capacity to meet the exertional demands of medium work. In addition, Claimant has the non-exertional limitations that follow: She can: continuously use her hands for simple grasping, pushing/pulling or arm controls, and fine manipulation; occasionally use her legs for pushing/pulling of leg controls; occasionally stoop and crouch; frequently kneel, crawl, climb, balance, reach overhead, work around unprotected heights, work around moving machinery, operate motor vehicle equipment and sustain exposure to marked changes in temperature and humidity, while experiencing a moderately severe degree of pain that occurs once a month and persists for 2-3 hours. Claimant has no degree of impairment of the ability to respond appropriately to supervisors; no degree of impairment of the ability to respond appropriately to co-workers; a mild degree of impairment of the ability to respond appropriately to customers and other members of the general public; a mild degree of impairment of the ability to use judgment in simple one or two step work-related decisions; a moderate degree of impairment of the ability to use judgment in detailed or complex work-related decision; a mild degree of impairment of the ability to deal with changes in a routine work setting; no degree of impairment of the ability to understand, carry out and remember simple one and two-step instructions; a moderate degree of impairment of the ability to understand, carry out and remember detailed of complex [sic] instructions; a mild degree of impairment of the ability to maintain attention, concentration or pace for

       periods of at least two hours; no degree of impairment of the ability to maintain social functioning; and no degree of impairment of the ability to maintain activities of daily living.

7. Claimant can perform past relevant work.

8. Claimant is a 27-year-old "younger" individual.

9. Claimant has a "special" high school education.

10. Claimant has not acquired skills that will transfer to other jobs within the residual functional capacity set out above.

11. If the clamant had the exertional capacity to perform the full range of medium work, 20 CFR 404.1569, 20 CFR 416.969, and Medical-Vocational Rule 203.28 [sic] 20 CFR Part 404, Table No. 3 to Appendix 2 of Subpart P would direct a conclusion that the claimant is "not disabled."

12. Although the claimant's additional non-exertional limitations do not allow her to perform the full range of medium work, using the above-cited rule as a framework for decision-making and the vocational expert's testimony, there are a significant number of jobs in the regional or national economies which the claimant could perform. Examples of such jobs are: Cleaner/Housekeeper (unskilled, light) with 11,000 jobs regionally and 550,000 nationally; Assembler (unskilled, light) with 11,100 jobs regionally and 555,000 jobs nationally; and Hand Packer (unskilled, light) with 4,200 jobs regionally and 210,000 jobs nationally.

13. Claimant is not disabled within the meaning of the Social Security Act.

(R. 33-34).

    Pettus disagrees and contends that the Commissioner's decision is not supported by

substantial evidence in the record. Specifically, Pettus contends that the evidence establishes that she meets the requirements of listing 12.05C.

C.  *Listing 12.05C*

Listing 12.05C requires

> [a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The regulations explain that listing 12.05

> is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). *If* [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing.

*Id*. at 12.00A (emphasis added).

The ALJ concluded that Pettus's alleged mental impairment failed to satisfy the diagnostic description of the introductory paragraph (R. 24-26), which requires (1) "significantly subaverage general intellectual functioning"; (2) "deficits in adaptive functioning"; and (3) initial manifestation of (1) and (2) during the "developmental period," which the paragraph defines as "before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

While the ALJ concluded, based on previous evaluations of Pettus's intelligence

quotient ["I.Q."], that Pettus "had significantly subaverage general intellectual functioning manifested during the developmental period," he found nonetheless that she did not satisfy the initial diagnostic description because she "does not have significant limitation of functioning in two or more areas of adaptive functioning". Therefore, the ALJ did not address the more detailed criteria set forth in 12.05C.

Nevertheless, Pettus's puzzling argument focuses exclusively on the detailed criteria set forth in listing 12.05C. Consequently, she fails to direct the court to any error that would require the court to reject the Commissioner's final decision.

Inexplicably, Pettus focuses on the existence of I.Q. scores that would satisfy the requirements of 12.05C but ignores altogether the ALJ's determination that Pettus failed to meet the requirements set forth in the introductory paragraph of 12.05. Ironically, the ALJ appears to have agreed with Pettus, inasmuch as he concluded that her I.Q. scores were sufficient not only to satisfy the first aspect of the introductory diagnostic description but also to establish a deficit in one of ten specified adaptive skill area, namely functional academics (R. 25-26). This, the ALJ concluded, was simply not enough, because the evidence did not demonstrate that Pettus had deficits in at least one of the other adaptive skill areas; that conclusion, which ultimately was dispositive, was not based on Pettus's I.Q.[3]

Thus, even if the court were to agree with Pettus that the ALJ should have relied upon

---

[3]Pettus does not challenge, or even acknowledge for that matter, the ALJ's interpretation of the relevant aspects of the regulations or his application of the law based on his interpretation. That is, she does not challenge the ALJ's understanding of the introductory paragraph to listing 12.05 or his reliance on professional texts he apparently viewed as having established the "standards" controlling his decision (R. 25-26).

a different I.Q. test than the one the medical expert endorsed at her hearing, it would have no choice but to affirm the Commissioner's decision based on the ALJ's unchallenged, overriding conclusion that, notwithstanding Pettus's impaired intellectual functioning, she did not satisfy all of the requirements of the relevant listing.

## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the final decision of the Commissioner is AFFIRMED.

DONE this 21st day of August, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE